Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California  95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorney for Plaintiff
JO ANNE GRAFF

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| JO ANNE GRAFF,<br><br>                                  Plaintiff,<br><br>v.<br><br>HUNT & HENRIQUES, a general partnership, MICHAEL SCOTT HUNT, individually and in his official capacity, and JANALIE ANN HENRIQUES, individually and in her official capacity,<br><br>                                  Defendants. | Case No.  C08-00908-JF-PVT<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA ISSUED TO PLAINTIFF'S COUNSEL AND FOR PROTECTIVE ORDER**<br><br>Date:          July 29, 2008<br>Time:         10:00 a.m.<br>Judge:        Honorable Patricia V. Trumbull<br>Courtroom: Courtroom 5, 4th Floor<br>Place:         280 South First Street<br>                    San Jose, California |

COMES NOW the Plaintiff, JO ANNE GRAFF, by and through her attorney Fred W. Schwinn of the Consumer Law Center, Inc., and hereby submits her Reply Memorandum of Points and Authorities in Support of Motion to Quash Deposition Subpoena Issued to Plaintiff's Counsel and for Protective Order filed herein.

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.    Defendants Are Attempting to Shift the Court's Focus Away from Their Own Actions by Pointing a Finger at Plaintiff and Her Counsel . . . . . . . . . . . . . . . . . . . 1

    2.    The Only Issues Remaining In this Case are Legal Questions, Which Do Not Require Any Factual Discovery to Resolve . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    3.    Defendants' Unclean Hands Affirmative Defense in Inapplicable to the Instant Case, Thereby Alleviating the Need to Take the Deposition of Plaintiff's Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    4.    Regardless of Relevance, the Information Sought by Defendants is Privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    5.    A Protective Order Is Appropriate in this Case Because Defendants Have Not Made the Required Showing to Compel the Deposition of Plaintiff's Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

*American Casualty Co. V. Krieger*, 160 F.R.D. 582 (S.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . 10

*American Surety Company of New York v. Gold*, 375 F.2d 523 (10th Cir. 1967) . . . . . . . . . . . 4

*Bailey v. Clegg, Brush & Associates, Inc.,* 1991 U.S. Dist. LEXIS 21591
(N.D. Ga. June 14, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Baker v. C.G. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60  (2d Cir. 1993) . . . . . . . . . . . . . . . . 5

*Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . 6

*Clarke v. American Commerce National Bank*, 974 F.2d 127 (9th Cir. 1992) . . . . . . . . . . . . . . 8

*Colorado v. Idarado Mining Co.*, 707 F. Supp. 1227 (D. Colo. 1989),
*rev'd on other grounds*, 916 F.2d 1486 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639 (D. Utah 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*FMC Technologies, Inc. v. Edwards*,
2007 U.S. Dist. LEXIS 18328 (W.D. Wash. March 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fonseca v. Regan*,  734 F.2d  944 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*General Electric Co. v. Litton Business Systems, Inc.*, 715 F. Supp. 949
(W.D. Mo. 1989), *aff'd*, 920 F.2d 415 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Howlett v. Rose*, 496 U.S. 356 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d 359 (9th Cir. 1982) . . . . . . . . . . . . . 8

*International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*,
296 F. Supp. 920 (D. Haw. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Irwin v. Mascot*, 96 F. Supp. 2d 968 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kiblen v. Pickle*, 653 P.2d 1338 (Wash. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kiefer-Stewart  Co.  v. Seagram  & Sons*,
340 U.S. 211; 71 S. Ct. 259; 95 L. Ed. 219 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Klapper v. Shapiro,* 154 Misc. 2d 459, 586 N.Y.S.2d 846 (N.Y. Sup. Ct. 1992) . . . . . . . . . . . . 5

*Loughran v.  Loughran*, 292 U.S. 216; 54 S. Ct. 684; 78 L. Ed. 1219 (1934) . . . . . . . . . . . . . . 4

*Mejia v. Marauder Corporation*, 2007 U.S. Dist. LEXIS 21313
(N.D. Cal. March 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1    *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472 (N.D. Cal. 1998) . . . . . . . . . . . . . . . 10

2    *Montsdoca v. Highlands Bank and Trust Company*, 85 Fla. 158 (Fla. 1923) . . . . . . . . . . . . . . . . . 4

3    *National Bank & Loan Co. v. Petrie*, 189 U.S. 423; 23 S. Ct. 512; 47 L. Ed. 879 (1903) . . . . . . 4

4    *Northwestern National Casualty Company v. McNulty*, 307 F.2d at 442 (5th Cir. 1962) . . . . . . . 4

*Obabueki v. International Business Machines Corp.*,
2001 U.S. Dist. LEXIS 4092 (S.D.N.Y. March 30, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pastrana v. Local 9509, Communications Workers of America, AFL-CIO*,
2007 U.S. Dist. LEXIS 73219 (S.D. Cal. September 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
392 U.S. 134; 88 S. Ct. 1981; 20 L. Ed. 2d 982 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pinter v. Dahl*,  486 U.S. 622, 633; 108 S. Ct. 2063; 100 L. Ed. 2d 658 (1988) . . . . . . . . . . . . . . . 4

*Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Semar v. Platte Valley Federal Savings & Loan Association*,
791 F.2d 699 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shelton v. American Motors Corporation,* 805 F.2d 1323 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . 10

*Smith Land and Improvement Corp. v. Celotex Corp.*,
851 F.2d 86 (3d Cir. 1988), *cert. denied*, 488 U.S. 1029 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*St. Paul Guardian Insurance Company v.  Johnson*, 884  F.2d  881 (5th Cir. 1989) . . . . . . . . . 4, 5

*United States v. Atlas Minerals and Chem., Inc.*,
797 F. Supp. 411 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Kramer*, 757 F. Supp. 397 (D.N.J. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES**

15 U.S.C. § 1692c(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

**ARGUMENT**

**1. Defendants Are Attempting to Shift the Court's Focus Away from Defendants' Actions by Pointing a Finger at Plaintiff and Her Counsel**

Defendants oppose Plaintiff's motion by employing a tactic frequently used by debt collectors and their counsel: attempting to divert the Court's focus from the debt collector's unlawful conduct to the consumer Plaintiff and her counsel. Instead of addressing the legal merits of this case, Defendants would rather point a finger at Plaintiff in an attempt to shift the focus of the Court's attention away from Defendants' actions and statutory violations. The factual record in this case is not in dispute, Defendants admit this in their Opposition. Moreover, Plaintiff readily admits, and so will stipulate, that the facts in this case are as stated in the Declaration of Michael S. Hunt in Support of Defendants' Opposition to Plaintiff's Motion to Quash Deposition Subpoena of Fred W. Schwinn. Therefore, Defendants arguments in support of allowing the deposition of Plaintiff's counsel are mere red herrings that should not distract the Court. As further explained below, the information Defendants purportedly seek to gain from such a deposition is not relevant to any claim made by Plaintiff nor any defense alleged by Defendants in this case. In any event, Defendants would not be able to obtain any of the information they seek in a deposition of Plaintiff's counsel as it is privileged and undiscoverable.

The only issues which remain in this case are legal issues to be resolved by the Court. Defendants support their deposition subpoena by representing to the Court that "[t]he Case turns on whether [Plaintiff's counsel] failed to respond to Defendants' March 26, 2007 letter within a reasonable time."[1] It is undisputed that Defendants' March 26, 2007, letter received no response — this is not the relevant issue. The only relevant question which remains unresolved in this case is whether or not Defendants' March 26, 2007, letter sufficiently indicated that failure to respond would be viewed by Defendants as an abandonment of counsel's representation and, therefore, consent to resume directly dunning the Plaintiff.

---

[1] Defendants' Opposition to Plaintiff's Motion to Quash Deposition Subpoena of Fred W. Schwinn (Doc. 14) (hereinafter "Defendants' Opposition") at 4:16-17.

REPLY MEMORANDUM            -1-            Case No. C08-00908-JF-PVT

**2. The Only Issues Remaining In this Case are Legal Questions, Which Do Not Require Any Factual Discovery to Resolve**

Defendants claim that one of the reasons they seek a deposition of Plaintiff's counsel is to develop a full factual record with regard to the circumstances surrounding the Defendants' March 26, 2007, letter and why Plaintiff's counsel did not respond to said letter. Defendants assert that "[t]he Case turns on whether [Plaintiff's counsel] failed to respond to Defendants' March 26, 2007 letter within a reasonable time,"[2] and "[t]o prevail on her FDCPA claim, Graff bears the burden of proving that Mr. Schwinn did not 'fail[] to respond' to Defendants' correspondence within a reasonable period of time."[3] This misstates the relevant inquiry — there was no response.

Defendants' argument rests on misapplied language from the Fair Debt Collection Practices Act, specifically 15 U.S.C. § 1692c(a)(2) which states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.[4]

Defendants read this section too broadly in light of the facts in this case. The text of Defendants' March 26, 2007, letter states:

> Please advise within ten days if you are authorized to accept service of process on behalf of Ms. Gresham.[sic] If we have not heard from you within ten days of the date of this letter, litigation will proceed and service will be attempted on your client directly.

It is factually undisputed that Plaintiff's counsel did not respond to this letter. Therefore, the only disputes left are legal issues which can be decided by the Court without additional fact discovery: whether a reasonable consumer attorney would have interpreted the failure to respond to

---

[2] Defendants' Opposition at 4:16-17.

[3] Defendants' Opposition at 2:16-18.

[4] 15 U.S.C. § 1692c(a)(2).

1  Defendants' letter to result in further dunning notices being sent directly to the consumer.

2  Plaintiff argues that a reasonable consumer attorney would interpret Defendants' March 26, 2007, to mean that failure to respond would be viewed as consent to direct service of process by a process server of lawsuit paperwork on the consumer and <u>not</u> consent to direct dunning communications that were other than "service of process."  Therefore, Plaintiff argues that Defendants' July 13, 2007, collection dunning letter sent directly to Plaintiff was without the consent of Plaintiff's counsel.  Further, if Defendants had indicated in a letter that failure to respond would result in dunning letters being sent directly to Plaintiff, her counsel would have been put on notice and could respond by indicating that this would be inappropriate and contrary to his representation of Plaintiff.  However, Defendants did not indicate their intention to dun Plaintiff directly, therefore Defendants could not infer that Plaintiff's counsel's consented to further direct communications with Plaintiff.

13  Plaintiff has no factual burden with regard to her claim under 15 U.S.C. § 1692c(a)(2), and there is no factual dispute regarding Plaintiff's counsel's lack of response to Defendants' March 26, 2007, letter.  The only issues that remain are legal issues regarding the interpretation of Defendants' March 26, 2007, letter.  The actions and communications of Plaintiff's counsel have no relevancy on these legal issues, therefore a deposition of Plaintiff's counsel is not necessary and should not be permitted.

**3.     Defendants' Unclean Hands Affirmative Defense is Not Applicable in Fair Debt Collection Practices Act Cases**

Another reason put forth by Defendants to justify the deposition of Plaintiff's counsel is to "discover" information which may support an unclean hands affirmative defense.  "[T]he Defendants have asserted the affirmative defense of unclean hands in this case.  They are entitled to take the deposition to investigate whether Mr. Schwinn and Graff intentionally failed to respond to H&H's letter in an attempt to fabricate the alleged FDCPA claim asserted in this action."[5]  The affirmative defense of unclean hands does not support Defendants' desire to depose Plaintiff's

---

[5] Defendants' Opposition at 6:20-24.

REPLY MEMORANDUM                -3-                Case No. C08-00908-JF-PVT

counsel as it is inapplicable to the case at bar. Defendants may not use unclean hands to justify obtaining discovery of any kind. The United States Supreme Court has held that, "The elements of, and the defenses to, a federal cause of action are defined by federal law."[6] Therefore, state law equitable defenses are not applicable to federal statutory claims.

Unclean hands is an equitable remedy which is "unavailable to defeat rights which are statutory or in furtherance of a strong public policy."[7] Further, long-standing principles in consumer protection cases establish that the consumer's conduct, whether or not questionable, is not a relevant consideration in an action in which the consumer is acting as a private attorney general to enforce laws which represent the public policy.[8] The reason for this was explained by the Supreme Court with regard to anti-trust actions:

> A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of anti-trust enforcement. And permitting the plaintiff to recover a windfall gain does not encourage continued violations by those in his position since they remain fully subject to civil and criminal penalties for their own illegal conduct.[9]

Therefore, equitable remedies have not been applied to the Comprehensive Environmental

---

[6] *Howlett v. Rose*, 496 U.S. 356 (1990).

[7] *International Tel. & Tel. Corp. v. General Tel. & Electronics Corp.*, 296 F. Supp. 920, 924 (D. Haw. 1969), *citing, American Surety Company of New York v. Gold*, 375 F.2d 523, 528 (10th Cir. 1967), *see also, Northwestern National Casualty Company v. McNulty*, 307 F.2d at 442, 443 (5th Cir. 1962); *Montsdoca v. Highlands Bank and Trust Company*, 85 Fla. 158 (Fla. 1923).

[8] *Pinter v. Dahl*, 486 U.S. 622, 633, 637-38; 108 S. Ct. 2063; 100 L. Ed. 2d 658 (1988) (securities laws); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 136, 138; 88 S. Ct. 1981; 20 L. Ed. 2d 982 (1968) (antitrust); *Kiefer-Stewart Co. v. Seagram & Sons*, 340 U.S. 211, 214; 71 S. Ct. 259; 95 L. Ed. 219 (1951) (illegal conduct of plaintiff cannot legitimize defendant's action or immunize defendant from liability); *Loughran v. Loughran*, 292 U.S. 216, 228; 54 S. Ct. 684; 78 L. Ed. 1219 (1934); *National Bank & Loan Co. v. Petrie*, 189 U.S. 423, 425; 23 S. Ct. 512; 47 L. Ed. 879 (1903); *St. Paul Guardian Insurance Company v. Johnson*, 884 F.2d 881 (5th Cir. 1989); *Fonseca v. Regan*, 734 F.2d 944 (2d Cir. 1984) (possibly illegal source of funds in suitcase not relevant to claim for possession of suitcase).

[9] *Perma Life Mufflers*, 392 U.S. at 138.

Response, Compensation and Liability Act,[10] the Fair Credit Reporting Act,[11] the Truth in Lending Act,[12] or the Fair Debt Collection Practices Act.[13]

Furthermore, equitable defenses are not available to debt collectors under the Fair Debt Collection Practices Act because Congress limited the defenses available in these cases.[14]  In enacting the FDCPA, Congress carefully balanced the equities and structured the incentives of debt collectors, creditors and consumers in a way that advances the statute's purposes.  The Ninth Circuit has already appropriately rejected the suggestion that it should "impose equitable considerations" on a strict liability consumer protection statute, because "the statute already contains these

---

[10] *Colorado v. Idarado Mining Co.*, 707 F. Supp. 1227, 1232 (D. Colo. 1989), *rev'd on other grounds*, 916 F.2d 1486 (10th Cir. 1990) (holding that only statutorily defined defenses, and not equitable defenses, are available under CERCLA); *Smith Land and Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir. 1988), *cert. denied*, 488 U.S. 1029 (1989) (holding that although defenses in § 107(b) of CERCLA coexist with equitable considerations that may mitigate damages, applying doctrine of caveat emptor to bar liability would not be in keeping with policies of CERCLA); *General Electric Co. v. Litton Business Systems, Inc.,* 715 F. Supp. 949, 956 (W.D. Mo. 1989), *aff'd*, 920 F.2d 415 (8th Cir. 1990) (holding that alleged equitable defenses of unclean hands would not be in keeping with congressional intent regarding CERCLA); *United States v. Kramer*, 757 F. Supp. 397, 412 (D.N.J. 1991) (considering equitable factors only during contribution phase of CERCLA trial; such factors do not affect liability of responsible parties under § 107 of CERCLA); *United States v. Atlas Minerals and Chem., Inc.*, 797 F. Supp. 411, 416 (E.D. Pa. 1992) (holding that although equitable considerations might be appropriate in connection with damage allocation and apportionment phase of CERCLA cleanup case, they are not defenses to liability).

[11] *St. Paul Guardian Ins. Co.*, 884  F.2d at 881, *Kiblen v. Pickle*, 653 P.2d 1338, 1343 (Wash. App. 1982); *Obabueki v. International Business Machines Corp.,* 2001 U.S. Dist. LEXIS 4092 (S.D.N.Y. March 30, 2001); *Klapper v. Shapiro,* 154 Misc. 2d 459, 586 N.Y.S.2d 846 (N.Y. Sup. Ct. 1992).

[12] *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801-02 (6th Cir. 1996); *Semar v. Platte Valley Federal Savings & Loan Association*, 791 F.2d 699, 705 (9th Cir. 1986).

[13] *Mejia v. Marauder Corporation*, 2007 U.S. Dist. LEXIS 21313 at *16-17 (N.D. Cal. March 15, 2007) (J. Lloyd); *Keele v. Wexler*, 149 F.3d 589, 595-96 (7th Cir. 1998); *Irwin v. Mascot*, 96 F. Supp. 2d 968 (N.D. Cal. 1999); *Ditty v. Check Rite, Ltd.,* 182 F.R.D. 639 (D. Utah 1998); *Bailey v. Clegg, Brush & Associates, Inc.,* 1991 U.S. Dist. LEXIS 21591 (N.D. Ga. June 14, 1991).

[14] *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993).

1  considerations as defenses."[15] Indeed, the Ninth Circuit has specifically emphasized that the plain
2  meaning of the FDCPA must be enforced unless "the result of the statute's plain meaning is
3  absurd."[16] There is nothing absurd about a statutory scheme that does not consider the equities, but
4  affords greater protection from liability for debt collectors who maintain procedures designed to
5  reduce harm to consumers than for those who do not.

6      Finally, there is no evidence which supports a suspicion that the unclean hands defense is
7  applicable to this case. Defendants accuse Plaintiff and her counsel of colluding and intentionally
8  acting to fabricate the FDCPA claims asserted in this action. However, there was nothing
9  underhanded or hidden in the actions of Plaintiff or her counsel. On February 19, 2007, Plaintiff's
10 counsel sent Defendants a letter which stated:

> I wish to provide you with written notice in your capacity as a creditor, collection agent, or collection attorney that this consumer debtor, now our client, is in fact and in law REPRESENTED BY AN ATTORNEY. As a result of this notice, and pursuant to section 1692b(6) and 1692c(a)(2) of Title 15 of the United States Code and section 1788.14(c) of the California Civil Code, you are to immediately terminate any further direct or indirect contacts with our client.
>
> . . .
>
> Upon receipt of this letter, any future direct or indirect contacts with our client will result in our office filing a claim against you under the Federal Fair Debt Collection Act, the California Civil Code, and any other available and applicable state and federal laws.
>
> . . .
>
> Based on the foregoing, any further communications concerning our client and/or the subject debt must be directed to the Consumer Law Center, Inc. Be advised that any request for information will be addressed in a reasonable time period.[17]

20     Thereafter, Defendants contacted the Plaintiff directly. As a result, Plaintiff brought suit
21 against Defendants. Plaintiff and her counsel acted exactly as they said they would in the February
22 19, 2007, representation letter to Defendants. As stated above, Plaintiff's counsel did not consent

---

[15] *Semar*, 791 F.2d at 705 (interpreting TILA); *see also Baker v. C.G. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) (describing FDCPA's and TILA's bona fide error defenses as "nearly identical").

[16] *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

[17] Complaint (Doc. 1) Exhibit "2."

REPLY MEMORANDUM     -6-     Case No. C08-00908-JF-PVT

1  to direct collection communications from Defendants to his client, Plaintiff in this case. If
2  Defendants sought consent for this type of communication they should have requested such in a
3  letter, just as the request to serve Plaintiff with court documents was requested in Defendants' March
4  26, 2007, letter.

5  As a defense that has no relevance or applicability to this case, Defendants may not justify
6  the deposition of Plaintiff's counsel by purporting to seek information which may support an
7  unclean hands affirmative defense.

### 4. Regardless of Relevance, the Information Sought by Defendants is Privileged

9  Despite an informal request, Defendants refused to disclose to Plaintiff the information they
10 sought until it was finally disclosed in opposition to Plaintiff's motion.[18]  In the opposition,
11 Defendants state:

> To defend this action, Defendants must be permitted to depose Mr. Schwinn to develop a full record. They are entitled to discover when he was retained, the scope of his engagement, the communications between him and Graff concerning the Defendants and the debt, the reasons for his failure to respond to Defendants' communications, and the nature of his participation in the events giving rise to this action.[19]

16 Defendants claim that "[b]y asserting an FDCPA claim which turns upon the scope and
17 circumstances of Mr. Schwinn's representation, Graff has put all these points at issue."[20] Plaintiff
18 disagrees as Plaintiff has not asserted a FDCPA claim which would put any of these points at issue.
19 The only points at issue are Defendants' collection activities and whether those collection activities
20 violated the Fair Debt Collection Practices Act. To determine Defendants' liability, the language
21 of their March 26, 2007, letter is the only issue, as explained above. The details of Plaintiff's
22 representation by counsel are not at issue.

23 Defendants wish to discover information regarding when Plaintiff's counsel was retained.

---

[18] Declaration of Fred W. Schwinn in Support of Motion to Quash Deposition Subpoena Issued to Plaintiff's Counsel and for Protective Order (Doc. 13) ¶ 5.

[19] Defendants' Opposition at 2:23-3:1.

[20] Defendants' Opposition at 3:1-2.

REPLY MEMORANDUM                -7-                Case No. C08-00908-JF-PVT

1 However, this information is irrelevant in this case. Further, it is obvious that Plaintiff's counsel
2 was retained prior to Defendants' sending their first dunning letter to Plaintiff, as the attorney
3 representation letter was sent to Defendants shortly thereafter.

4 Defendants wish to discover the scope of engagement between Plaintiff and her counsel.
5 However, this information is privileged.[21] Further, the February 19, 2007, attorney representation
6 letter sent by Plaintiff's counsel specifically refers to the debt which Defendants were collecting and
7 states, "Please be advised that the consumer debtor in the matter referenced above has retained the
8 services of the Consumer Law Center, Inc., to assist in the matter of debt relief. . . Based on the
9 foregoing, any further communications concerning our client and/or the subject debt must be
10 directed to the Consumer Law Center, Inc."[22] Based on the clear wording of this letter, it is obvious
11 that Defendants' collection activities were within the scope of engagement between Plaintiff and her
12 counsel. This is all the information that is relevant or necessary in this case. Whether or not
13 Plaintiff is represented by her counsel with regard to other matters is irrelevant and privileged.

14 Defendants wish to discover communications between Plaintiff and her counsel with regard
15 to Defendants and the debt they were attempting to collect. However, this information is obviously
16 protected by the attorney-client privilege and is undiscoverable by Defendants.[23]

17 Defendants wish to discover the reasons why Plaintiff's counsel did not respond to
18 Defendants' March 26, 2007, letter. However, this information is irrelevant. The Fair Debt

---

[21] *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992), *citing, In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d 359, 362 (9th Cir. 1982) ("correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege.").

[22] Complaint (Doc. 1) Exhibit "2" at 1 "Client/Matter: Jo Anne Graff-5466-1600-1808-9621," and 2 "Your Account or File No(s).: 5466-1600-1808-9621."

[23] *Clarke*, 974 F.2d at 129, *citing, In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d at 362 ("correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege.").

1  Collection Practices Act, 15 U.S.C. § 1692c(a)(2) does not authorize an inquiry into "reasons" why
2  a consumer's attorney does not respond to a letter. The only information that Defendants need to
3  support their legal argument is that their letter received no response — this is an undisputed fact.
4  It is now up to the Court is to decide the legal ramifications of these undisputed events.

5  Finally, Defendants wish to discover the nature of Plaintiff's counsel's participation in the
6  events giving rise to this litigation. Again, this is irrelevant. In any event, information regarding
7  Plaintiff's counsel's participation is already in the Complaint and is undisputed — Plaintiff's
8  counsel faxed Defendants an attorney representation letter on February 19, 2007.

9  Defendants assert that "[t]he information Defendants seek is non-privileged. By asserting
10 this claim and by offering Mr. Schwinn as a witness in support of her pending motion for summary
11 judgment, Graff has waived any claim of privilege on the issue."[24] However, as explained above,
12 Plaintiff has not asserted any claims which put at issue the scope and nature of her engagement with
13 counsel, the communications between her and her counsel, or her counsel's actions and reasons
14 behind those actions or inactions. The only facts regarding Plaintiff's representation by counsel
15 which are relevant to this litigation are already known by Defendants and are entirely undisputed.
16 There is no factual dispute regarding either the transmission or receipt of the correspondence in this
17 case — only the legal interpretation of that correspondence remains. Therefore, Plaintiff has not
18 waived any aspect of the attorney-client privilege with regard to this case.

19 Defendants also assert that "[i]n addition, if Mr. Schwinn and Graff colluded in attempt to
20 manufacture an FDCPA claim against Defendants, the information sought would not be
21 privileged."[25] However, as explained above, there was no collusion between Plaintiff and her
22 counsel to "manufacture an FDCPA claim," and there is absolutely no evidence to indicate
23 otherwise. Defendants "manufactured" this case by violating the Fair Debt Collection Practices Act.
24 Plaintiff filed her claims in this case as a direct result of Defendants directly communicating with
25 her in an attempt to collect a debt for which Defendants knew she was represented by counsel. **This**

---

[24] Defendants' Opposition at 6:24-27.

[25] Defendants' Opposition at 6:27-28.

REPLY MEMORANDUM                -9-                 Case No. C08-00908-JF-PVT

**is exactly what Defendants were told would happen in the February 19, 2007, representation letter from her counsel.** The fact that Plaintiff acted exactly as she said she would in response to direct communications from Defendants does not support Defendants' allegation of collusion between Plaintiff and her counsel.

### 5. A Protective Order Is Appropriate in this Case Because Defendants Have Not Made the Required Showing to Compel the Deposition of Plaintiff's Counsel

Defendants argue that Plaintiff has the burden of showing that taking the deposition of Plaintiff's counsel is inappropriate. In making this argument, Defendants attack Plaintiff's use of language from the case *Shelton v. American Motors Corporation*.[26] However, in courts throughout the Ninth Circuit,

> *Shelton v. American Motors Corp.*, 805 F.2d 1323, is "generally regarded as the leading case on attorney depositions." Under *Shelton*, opposing counsel's deposition may be taken if the party seeking the deposition has demonstrated that (1) "no other means exist to obtain the information than to depose opposing counsel," (2) "the information sought is relevant and nonprivileged," and (3) "the information is crucial to the preparation of the case."[27]

Applying the standard in *Shelton*, Plaintiff has demonstrated that Defendants have failed to meet the showing required to allow the deposition of Plaintiff's counsel. While Defendants state numerous times in their opposition that Plaintiff's counsel is the only person who has the information that they seek, this information could readily be provided by other means, such as interrogatories or requests for admission. However, this is a moot point because Defendants cannot demonstrate the second prong of the test — that the information sought is relevant and non-privileged. As discussed above, there is not a shred of evidence or an inference to be drawn which would make the information sought by Defendants relevant in this case. Further, the information sought is protected by attorney-client privilege. Finally, the information is not crucial to the

---

[26] 805 F.2d 1323 (8th Cir. 1986).

[27] *Pastrana v. Local 9509, Communications Workers of America, AFL-CIO*, 2007 U.S. Dist. LEXIS 73219 at *6 (S.D. Cal. September 28, 2007) (internal citations omitted), *citing*, *FMC Technologies, Inc. v. Edwards*, 2007 U.S. Dist. LEXIS 18328 (W.D. Wash. March 15, 2007); *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998), *see also, American Casualty Co. v. Krieger*, 160 F.R.D. 582, 585-91 (S.D. Cal. 1995).

preparation of Defendants' case as it is not relevant to any claim made by Plaintiff or any defense alleged by Defendants.

Given that Defendants cannot make the showing required, the Court should quash the deposition of Plaintiff's counsel.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff respectfully requests that the Court quash the deposition Subpoena of Plaintiff's counsel and issue an appropriate protective order.

CONSUMER LAW CENTER, INC.

By: /s/ Fred W. Schwinn
    Fred W. Schwinn, Esq.
    Attorney for Plaintiff
    JO ANNE GRAFF